Decided at PENDLETON, 13 August, 1898.

## LIEBE *v.* BATTMANN.

[54 Pac. 179]

GIFT—WHAT CONSTITUTES DELIVERY.— In order to constitute a delivery of a gift there must be a complete parting with the control over the alleged subject matter with a present design that the title shall at once pass completely to the donee.

IDEM.— No such delivery as is essential to a valid gift takes place where a note is indorsed by the holder and placed in an envelope addressed to a designated person, and the envelope placed on a table in the room of the writer who shoots himself and dies sometime after without any further direction as to the note.

33 OR.—16.

From Sherman : W. L. BRADSHAW, Judge.

Bill of mortgage foreclosure by George A. Liebe, as executor of R. G. Closter, deceased, against Chas. W. Battmann and Chas. A. Schutz who, it was alleged, claimed some interest in the note and mortgage. Battmann defaulted, and after a trial with Schutz there was a decree dismissing the suit, from which plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Condon & Condon*, and *W. H. Wilson*.

For respondent there was a brief over the names of *J. L. Story* and *Alfred S. Bennett*.

MR. JUSTICE WOLVERTON delivered the opinion of the court.

This is a suit to foreclose a mortgage made to secure the payment of a promissory note calling for $1,175, executed and delivered by the defendant Battmann to one R. G. Closter. The plaintiff claims title to the note and mortgage as the executor of the last will and testament of Closter, while the defendant Schutz asserts ownership based upon an alleged gift to him by Closter. This presents the only question in the case, and, if plaintiff is the owner, he is entitled to have the mortgage foreclosed, but, if not, the suit should be dismissed.

The facts upon which it is sought to establish the gift are, in substance, as follows : Closter and Schutz had been intimate friends for many years, and on Friday, August 21, 1896, were living in a house which they had rented together, and where they ate at the same table. There was a large room in the building, opening out of

which was a bedroom on the east and another on the
south.   Closter occupied the east room, and Schutz the
one on the south. Schutz, who had been out the night
before, came home about 5 o'clock in the morning, and,
after a brief but friendly conversation with Closter, re-
tired to his room, and about 6 o'clock heard the report of
a pistol shot coming from Closter's room, to which he
hastened, and found that Closter had shot himself in the
left side of the head, near the temple.   A physician be-
ing called, Closter requested him " to make short work
of it, that he wanted to die" ;  but shortly he passed into
a comatose state, from which he never rallied, and died
four days thereafter.   On a small table at the head of his
bed was found a couple of large envelopes, both sealed
and addressed, one to Charles A. Schutz, Esq., and the
other to Mrs. Bertha Vierea.   Schutz handed these en-
velopes to the plaintiff, who kept them until the death of
Closter, when the one addressed to Schutz was opened,
and found to contain the said note for $1,175, indorsed
"R. G. Closter" in ink, and a note written in pencil upon
a piece of another envelope in the following language,
viz. :  "Charlie, Dear Friend and Brother :  Please see to,
that Mrs. Bertha Vierea get the letter addressed to her,
and advise her how to manage.   Yours, R. G. Closter."
The envelope addressed to Mrs. Vierea was opened later,
and was found to contain a note of Charles Stubling and
wife to the deceased.   Until the Monday preceding the
tragedy, Closter had been living at the home of Mrs.
Vierea, but, owing to some misunderstanding, he went
to live with Schutz under the arrangement heretofore re-
lated.   Liebe testified that it was a habit of Closter's to
indorse all his notes, but Schutz testified that he saw the
note in question about a week prior, and that it was not
then indorsed ;  that some time previous to that Closter
was much discouraged touching his ability to collect the

note, and said to witness, "I don't think I will get anything out of it," and "I might as well give it to you." Witness also testified that Closter inquired of him whether, if he indorsed a note, he would have to transfer the mortgage also, and he told him that he thought the mortgage followed the note. Witness further stated that the indorsement appeared to have been freshly made. A will of the deceased was found bearing date March 30, 1893, by which he disposed of all his property, part to Mrs. Vierea, and other portions of it to three of plaintiff's children, and nominated plaintiff as executor.

Is there in this testimony sufficient to establish a gift of the note and mortgage by Closter to Schutz? The transaction is not supported by any valuable consideration, nor does anybody pretend that it is; so that, if there is no gift, Schutz's title must fail. Nor can it make any material difference what may be the quality of the gift, whether *inter vivos* or *causa mortis*, as the essential elements which go to establish it in either case are the same, in so far as the pivotal facts give caste to the transaction. There must be an intention in the donor to give, and a delivery, to pass the title. If *causa mortis*, these things must have been done under the apprehension of death from some present disease or some impending peril, but it is revocable and becomes void by recovery, escape from such peril, or the death of the donee before the donor: *Ridden* v. *Thrall*, 125 N. Y. 572 (11 L. R. A. 684, 21 Am. St. Rep. 758, 26 N. E. 627). We need only to consider the intention and the alleged delivery. That there was an intent to give we think is perfectly manifest from the evidence adduced. The inclosing of the indorsed promissory note in a sealed envelope, addressed to Schutz, together with the few lines written him touching the envelope addressed to Mrs. Vierea, indicates so strongly that such was the fact as to become insusceptible

of serious dispute.   It was held in *Caldwell* v. *Wilson*, 2 Speer, 75, that '' delivery (in case of gift) is a transfer of possession, either by actual tradition from hand to hand, or by an expression of the donor's willingness that the donee should take when the chattel was present, and in a situation to be taken by either party.''   This implies, as the facts of the case warrant, that the donor and donee shall also be mutually present.   ANDREWS, J., in *Beaver* v. *Beaver*, 117 N. Y. 421–428 (15 Am. St. Rep. 531, 6 L. R. A. 403, 22 N. E. 940) says : '' The delivery may be symbolical or actual; that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession.   In case of bonds, notes, or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention.''   Many authorities concur in holding that a declaration of gift in writing, without a delivery of the chattel, is ineffectual to transfer title, because, not being founded upon a valuable consideration, the supposed contract is *nudum pactum*, and may be revoked at the will of the donor.   And these, we are impressed, preponderate in weight of authority towards the establishment of the doctrine.   See *Young* v. *Young*, 80 N. Y. 422 (36 Am. Rep. 634); *Beaver* v. *Beaver*, 117 N. Y. 421 (15 Am. St. Rep. 531, 22 N. E. 940, 6 L. R. A. 403); *In re Crawford*, 113 N. Y. 565 (5 L. R. A. 71, 21 N. E. 692); *Connor* v. *Trawick's Adm'r*, 37 Ala. 289 (79 Am. Dec. 58); *Wadd* v. *Hazelton*, 137 N. Y. 215 (21 L. R. A. 693, 33 Am. St. Rep. 707, 33 N. E. 143.

There must be a parting with the dominion over the subject matter of the pretended gift, with a present design that the title shall pass out of the donor and to the donee, and this so fully and completely, to all intents and purposes, that, if the donor again resumes control over it without the consent of the donee, he becomes a

trespasser, for which he incurs a liability over to the donee except after revocation of a gift *causa mortis*. And so essential is delivery as a factor in the transaction that it is said : "Intention cannot supply it; words cannot supply it; actions cannot supply it. It is an indispensable requisite, without which the gift fails, regardless of the consequences": Thornt. Gifts, § 131. See, also, *McCord's Adm'r* v. *McCord*, 77 Mo. 166 (46 Am. Rep. 9); *Smith* v. *Ferguson*, 90 Ind. 229 (46 Am. Rep. 216); *Hatch* v. *Atkinson*, 56 Me. 324 (96 Am. Dec. 464); *Wilcox* v. *Matteson*, 53 Wis. 23 (40 Am. Rep. 754, 9 N. W. 814); *Board of Sup'rs* v. *Auditor General*, 68 Mich. 659–665 (36 N. W. 794); *Gano* v. *Fisk*, 43 Ohio St. 462 (54 Am. Rep. 819, 3 N. E. 532). The reason for the rule requiring delivery is obvious, and is founded upon "grounds of public policy and convenience, and to prevent mistake and imposition": *Noble* v. *Smith*, 2 Johns. 52 (3 Am. Dec. 399).

Measured by the requirements of law, there was no delivery of the note to Schutz, nor does the fact that the note was indorsed dispense with its necessity. Such an indorsement, without consideration, could not have stronger force or operation than a parol gift or by writing not under seal. Whatever might have been Closter's intention in writing his name on the back of the note, he could revoke the gift before delivery simply by retaining the note, and Schutz could not assert title thereto until something else had been done to complete the transaction. It cannot be said that Closter ever parted with his dominion. If so, when did it occur? Assuredly not before he made the attempt upon his life, for Schutz was not present to receive it. Placing the note upon his table in the sealed envelope addressed to Schutz was not a relinquishment of possession, because it remained with him and under his complete and absolute control. He could,

at any instant, while conscious and in his right mind, have bestowed it upon any other person, at his liking, and Schutz could not have prevented, nor would it have been an invasion of any rights acquired by reason of the indorsement and ensealment within the addressed envelope. And there could have been none after the shooting, for the note was not taken from the table nor mentioned by the deceased. The case can be no stronger than if the sealed envelope had been found among his other effects, for it was upon his table and within a room occupied solely by him. It was his intention, no doubt, that Schutz should find and appropriate it, but the right to make an appropriation did not accrue within the lifetime of Closter, and Schutz cannot now claim the property as against Closter's personal representative. The decree of the court below will therefore be reversed, and one here entered foreclosing the mortgage.

REVERSED.

Decided October 17, 1898.
ON PETITION FOR REHEARING.
°[54 Pac. 662]

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

An elaborate and exhaustive petition for rehearing has been filed in this case, and we are constrained to review to some extent the salient points involved. Counsel say the gift was not consummated until the subject thereof reached the hands of Schutz, but that, having acquired possession of it prior to the death of Closter, it became his property at the instant of his taking possession. This view overlooks the fact that Closter was not then in a mental condition to bestow anything. It was Closter's purpose, no doubt, to make the donation in contempla-

tion of death, not that he understood the distinction be-
tween a *donatio mortis causa* and a gift *inter vivos*, but
such was the nature of the plan adopted, which he sup-
posed would effect a change of ownership in the property.
Death was absolutely necessary to render the gift in that
form irrevocable upon his part, for it must be remem-
bered that such a gift is always conditional until the
event in contemplation of which it is made has actually
come to pass. This, as we have shown in the main
opinion, is the distinctive element which determines the
nature of the gift. The object was to make the gift, but
to retain the title while living. None other is manifest
from his acts. This becomes apparent from the fact of
his leaving the subject thereof on the table in his own
room for the donee to discover and appropriate after he
had put an end to his own existence. But the gift must
fail as a gift *causa mortis* simply because there was no
delivery. It is said that the donee discovered the prop-
erty and appropriated it while Closter was yet living,
but it was not his intention that the donee should thus
or otherwise appropriate it while he lived, so that its
possession prior to Closter's death was obtained contrary
to his manifest intention. True, there was an ultimate
intention to give, but none of executing the gift at that
specific time, or that it should be consummated in the
particular manner which it is claimed is sufficient to
complete the transaction and pass the title. The ulti-
mate intention is plain enough, but the manner adopted
for the consummation of the gift was legally insufficient,
as it contemplated no change in title, either conditionally
or unconditionally, prior to his decease. When Mr.
Schutz possessed himself of the envelope and its contents
he did that which the donor did not purpose should be
done,— for it was designed, as we have said, that he
should have them only after his death, not before ; so

that he took them without the donor's consent, and there
could be no delivery in the absence of such consent.
If the note indorsed and inclosed in the envelope, ad-
dressed as it was, had been handed by Closter to Schutz
without saying anything, the act would have disclosed
the purpose of the donor, and the gift would have been
complete, as the delivery would have been accomplished.
So, it may be admitted that if Closter had left the note
upon a stump, on a by-way, to use the illustration of
counsel, intending that Schutz should come along and
discover and appropriate it, when he had possessed him-
self of it, if within the lifetime of Closter, the delivery
would have been completed and the gift consummated.

But suppose, in the first instance, Closter had sub-
joined a condition, when he handed the note to Schutz,
that it should be and remain the property of the donor
while living, and when dead it should pass to the donee ;
there would be no gift, because there would be no pur-
pose of passing title within the lifetime of the donor.
The transaction would partake of the nature of a testa-
mentary disposition, but could not operate as a *donatio
mortis causa,* or a gift *inter vivos;* as, in either case, the
title must pass within the lifetime of the donor, although
in the former it is subject to revocation. *Basket* v. *Hassell,*
107 U. S. 602,. ( 2 Sup. Ct. 415.)   So, in the second in-
stance, suppose it was intended, and in some way made
clearly apparent, that Schutz should, subsequent to the
death of the donor, and in that event only, have pos-
sessed himself of the property, and then appropriated it,
could it be said that there had been a delivery, if he had
come by and obtained it prior to Closter's demise?   In
such case, like the one at bar, there would have been no
intention that the title should thus pass, and without the
intention there could have been no delivery prior to his
death.   A mere passing of the naked possession does not

come up to the requirements of a good delivery. It
must be a transfer of the property with a purpose on the
part of the donor to relinquish his dominion over it,
and thereby to part with and divest himself of the title.
A case of some analogy and illustrative of the principle
is *Miller* v. *Jeffress*, 4 Grat. 472. There was a parol dec-
laration by a party in his last illness of a gift of certain
bonds which had been previously assigned to, and were
then in the possession of, a certain firm of which the
donee was a partner, but further than this there was no
delivery of the subject of the intended gift. The court
say, speaking through BALDWIN, J. : "A delivery is in-
dispensable to the validity of a *donatio mortis causa*. It
must be an actual delivery of the thing itself, as of a
watch or a ring ; or the means of getting the possession
and enjoyment of the thing, as of the key of a trunk or
a warehouse in which the subject of the gift is deposited ;
or, if the thing be in action, of the instrument by using
which the chose is to be reduced into possession, as a
bond, or a receipt, or the like. * * * It is not the
possession of the donee, but the delivery to him by the
donor, which is material in a *donatio mortis causa*. The
delivery stands in the place of nuncupation, and must
accompany and form a part of the gift. An after-ac-
quired possession of the donee is nothing, and a previous
continuing possession, though by the authority of the
donor, is no better."

We quote again from WOODS, J., in *Dickeschied* v. *Ex-
change Bank*, 28 W. Va. 340, who states the essentials
to a valid gift *inter vivos* as well as those of a *donatio
mortis causa*. He says : " Gifts *inter vivos* have no refer-
ence to the future, and go into immediate and absolute
effect. To constitute such a gift, the donor must be de-
vested of, and the donee invested with, the right of prop-
erty in the subject of the gift. It must be absolute, irrevo-

cable, without any reference to its taking effect at some future period. The donor must deliver the property, and part with all present and future dominion over it." Touching a gift *causa mortis*, he says : " There must be a delivery of the property to the donee, or to some other person for his use. The donor must part with all dominion over it, so that no further act of him, or of his personal representative, is necessary to vest the title perfectly in the donee ; to belong to him presently, as his own property, in case the owner should die of his present illness, or from the impending peril, during the lifetime of the donee, and without making any change in relation to the gift." See, also, *Delmotte* v. *Taylor*, 1 Redf. Sur. 417 ; *Dunbar* v. *Dunbar*, 80 Me. 152 ( 6 Am. St. Rep. 166, 13 Atl. 578) ; *Bigelow* v. *Paton*, 4 Mich. 170 ; *Evans* v. *Lipscomb*, 31 Ga. 71 ; *Green* v. *Carlill*, 4 Ch. Div. 882. So that whether we look at the transaction in the light of authority, or examine it upon principle, it is not possible to sustain it as constituting a gift, — a completed, consummated act, — passing title to the donee.

The quotation from *Caldwell* v. *Wilson*, 2 Spears, 75, does not seem to be understood. Two methods of delivery are defined, — one, by actual tradition from hand to hand ; the other, by an expression of the donor's willingness that the donee should take when the chattel was present and in a situation to be taken by either party. In the latter there is involved no actual transfer of possession. The donor says, " There is the chattel ( it being present ) ; take it " ; and the donee assents. This, the authority holds, would be equivalent to an actual manual transfer of possession from hand to hand. Hence we said the definition implied the mutual presence of the donor and donee. Of course, the assent or acceptance of the donee may be through an agent. But in this case,

there being no agent for either party, there could have been no delivery until Schutz took manual possession, and it is the delivery accomplished by actual tradition from hand to hand that the counsel is contending for. The vice of the argument, however, lies in supposing that title passed at the instant the donee came into possession of the note and mortgage, it being before the donor had ceased to breathe, notwithstanding the fact that he was then irrational, and made no mention, either directly or indirectly, touching the property, or of its further disposal by him. It was the purpose of Closter to take his life instantly. If he had thus accomplished his purpose, it is admitted there would have been no delivery by reason of the donee's subsequently finding and appropriating the property. Although he lived some four days, he never manifested any other or further intention respecting it; so that we are relegated to the primary manifestation of his ultimate intention, and it leaves no new or additional act by which to signalize the transaction as a gift in any aspect. The petition will be denied.

REHEARING DENIED.

Decided at PENDLETON, 13 August, 1898.