Decided 27 July, rehearing denied 5 October, 1903.

## WAITE *v.* GRUBBE.

[ 63 Pac. 206.]

GIFT— EVIDENCE OF INTENTION OF DONOR.

1. Declarations by a father to his daughter, "I give this money to you. It is yours," etc., show unmistakably a present intent to give the money to the daughter; and the fact that in the same connection he also said, "If I should get well, and want some of it, would you let me have it?" and she replied, "Yes, papa, if you get well, you can have all of it," only emphasizes the purpose to give presently.

GIFT—EVIDENCE OF DELIVERY BY FATHER TO CHILD.

2. Decedent having buried sums of money in various places about his estate, took his daughter to the whereabouts of the money during his last illness, and while quite feeble, and told her definitely the several places where it was concealed, with a positive declaration that he gave it to her, cautioning her not to let any one else know where it was, and advising her to leave it there until the place was rented or she needed it. *Held*, a sufficient delivery.

GIFT— CLAIM AGAINST DECEDENT'S ESTATE.

3. A claim to certain property as a gift cannot be regarded as a claim against the estate of the donor, within the meaning of Section 1161, B. & C. Comp., requiring other evidence than that of the claimant to establish it.

From Douglas: JAMES W. HAMILTON. Judge.

This is an action by F. B. Waite, as executor of the estate of Fendal Sutherlin, deceased, against Kate Grubbe and her husband to recover possession of $7,885 in gold coin, alleged to be the property of the estate of Fendal Sutherlin, deceased. The defendant Kate Grubbe claims to be the owner of the money, and to have acquired it by gift from the deceased. At the trial, all the evidence having been submitted, the circuit court, upon motion of the plaintiff, directed the jury to return a verdict in his behalf for the entire sum, and, judgment having been rendered accordingly, the defendants appeal. REVERSED.

For appellant there was a brief over the names of *Geo. M. Brown, J. C. Fullerton*, and *Dolph, Mallory, Simon & Gearin*, with an oral argument by *Mr. Fullerton* and *Mr. Rufus Mallory*.

For respondent there was a brief and an oral argument by *Mr. F. W. Benson* and *Mr. Oliver P. Coshow*.

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

Fendal Sutherlin died testate August 29, 1901, leaving an estate of the probable value of $200,000. The defendants are his daughter and her husband. Mrs. Grubbe testified, in substance, that she was with her father one week in May, during his last illness, and from the last of June or first of July to the day of his death, and attended upon him constantly ; that he told her several times he intended to give her some money, as he had not done as much for her as for the other girls — had never sent her to school, or educated her, or given her any money; that late one night he observed that there was a swelling in his legs, and became apprehensive that it was going to his heart, and said to her : "I have $10,000 buried on this place, and I want to give it to you. I am going to give it to you, and in the morning I will show you where it is buried ;" and she continued in language following : "So in the morning he said for me to get a little bucket, and go to the garden, 'and I will come to the garden. I can take a little bucket along, and get some beans, and the rest will not suspicion what we are going for.' So I got a bucket and we went to the garden, and I saw that he could not walk very far, so as we passed the smokehouse there was a box there, so I picked up the box and carried it along for him to sit on, and when we got a little ways he began to fall. So I got hold of him, and placed him on the box, and he sat there, and he pointed the place out to me, and he said : 'I give this money to you. It is yours. But if I should get well, and want some of it, would you let me have it ?' And I said : 'Yes, papa; if you get well you can have all of it. I will give it back to you if you get well.' He went then and pointed out the places there. He said, 'You know that old chicken house down there in the hog lot,' and I said 'Yes,' and he said, 'I buried about $2,000 there.' He said : 'I dug

up $1,000. I had the boys scrape the dirt away from the top of it, and haul it on the garden. They thought I was putting it on the garden, but I was having them take it away so I could get the money. Now,' he said, 'in the old chicken house across the creek, I buried $2,000 there. In some places there may be more, and in some places there may be less; but the next place, now,' he said, 'is the smoke-house. I buried $2,000 there, but I have strong suspicions some one found part of it.' Then he said: 'The next place is the water-closet. I buried $2,000 in there.' And he said: 'You know the garden, there. You see that Red June tree in the corner of the garden?' And I said 'Yes.' And he said: 'The second post this side of that tree is a tile ditch goes through there, and out this way there is a tile ditch goes through there;' and he says, 'I buried $2,000 there; $1,000 on each side of the ditch.' * * He said it was mine; he gave it to me; he wanted me to have it. * * He talked with me about it several times during his sickness. The next time, I think, that he mentioned it, was when Mr. Waite and his wife came back over there, and he said not to tell any one about this money." The witness further testified that her father told her to leave the money where it was unless he should rent the place, in which event she should get what was in immediate danger of being found, but he said to leave the other where it was for safe keeping and get it as she needed it; and that she left the money there on the premises on the advice of her father. Benton Myers testified that Sutherlin some time in July, about six weeks prior to his death, told him that Kate, who was present at the time, was a noble woman; that he had not provided for her as well as he had for the other girls, and that he intended to pay her for staying with him — to give her something before he died; that he was so bad off after that he did not talk about the matter, but that at one time prior he said he expected to make Kate a

present of enough money before he died to make her even with the other girls. It was further shown that about the time of the transaction Sutherlin was very feeble, and was soon confined to his bed, from which he was never able to arise. Mrs. Grubbe did not possess herself of the money, or any part of it until some nine or ten months after the death of her father, when she and her husband and son found money at every locality pointed out to her as a place of concealment. This evidence was practically undisputed, and the question arises, was it sufficient to carry the case to the jury? And that depends upon its sufficiency to support a gift.

1. The gift, if consummated, was manifestly made in the apprehension of death from an impending mortal affliction. Two things are essential to a valid gift — the intent on the part of the donor to bestow the thing to be given upon the donee or object of his bounty, and a delivery, coupled with an acceptance on the part of the donee, express or implied. From the testimony of Mrs. Grubbe there can be no cavil touching the intent of her father to give her the money secreted at the different places disclosed and pointed out to her. His declarations were positive, signifying unmistakably a present gift or bestowal of the money upon her. His words were, "I give this money to you; it is yours," and other expressions of like import, indicating a purpose to bestow the money presently and unconditionally. True, he said to her in the same connection, while pointing out the places of deposit, "If I should get well, and want some of it, would you let me have it?" and she replied, "Yes, papa; if you get well you can have all of it. I will give it back to you if you get well." But this only emphasizes the purpose to give presently and effectually, as he made himself dependant upon her favor to let him have some money if he should get well, and be in need of it. He was manifestly labor-

ing under the solemn conviction that he would never recover from his impending malady, and that he was making an absolute and final disposition of the money, and that in all human probability he would never be in want of any of it.

2. The intention to give being manifest (and this is tacitly conceded), the real controversy is whether there was a delivery of the money by the father to the daughter sufficient to meet the requirements of the law, and thereby to make the gift effectual. We held in *Liebe* v. *Battmann*, 33 Or. 241 (54 Pac. 179, 72 Am. St. Rep. 705), that, to constitute a delivery, "there must be a parting with the dominion over the subject-matter of the pretended gift, with a present design that the title shall pass out of the donor and to the donee, and this so fully and completely, to all intents and purposes, that, if the donor again resumes control over it without the consent of the donee, he becomes a trespasser, for which he incurs a liability over to the donee, except after revocation of a gift *causa mortis*." From the viewpoint of the donee, the principle is stated by HARPER, Ch., in *Blake* v. *Jones*, Bailey, Eq. 141 (21 Am. Dec. 530, 534), as follows: "That seems to be regarded as a sufficient delivery which would authorize the donee to take possession without committing a trespass."

It is not necessary that there be a manual delivery, or an actual tradition from hand to hand. The delivery may be constructive or symbolical, but the general rule is that it must be as perfect and complete as the nature of the property and the attendant circumstances and conditions will permit: 14 Am. & Eng. Ency. Law (2 ed.), 1058; *Hillebrant* v. *Brewer and Wife*, 6 Tex. 45 (55 Am. Dec. 757). Says HARKER, P. J., in *People* v. *Benson*, 99 Ill. App. 325, 327: "An unequivocal declaration of gift, accompanied by a delivery of the only means by which possession of the article given can be obtained, is sufficient." The subject

of the gift in that case consisted of some notes that at the
time were locked up in a safe in a shop where the donor
had transacted business before being stricken with his last
illness. Coupled with the situation of the notes was the
declaration that he had given them to his wife in lieu of
a certain policy of life insurance, and it was held sufficient
to support the gift. In the language of Mr. Justice RUG-
GLES: "The thing given must be put into the hands of the
donee, or placed within his power by delivery of the means
of obtaining it": *Harris* v. *Clark*, 3 N. Y. 93, 113 (51 Am.
Dec. 352). Or, as was said by Mr. Justice LEONARD, with
more elaboration: "It is essential to a valid gift by parol
that there should be an actual or symbolical delivery. The
title does not pass unless possession, or the means of ob-
taining it, are conferred by the donor and accepted by the
donee. The situation, relation, and circumstances of the
parties and of the subject of the gift may be taken into
consideration in determining the intent to give and the
fact as to delivery. A total exclusion of the power or means
of resuming possession by the donor is not necessary":
*Cooper* v. *Burr*, 45 Barb. 9. In that case the donor, who
was confined to her bed, delivered the keys of a bureau
and some trunks kept in her room, with an unequivocal
declaration that she gave to the donee all her property,
and it was held to constitute a completed gift of the gold
and silver coins and jewelry contained in the bureau and
trunks. These principles and declarations of the law
touching the manner of delivery essential to a completed
and effectual gift have been many times applied: *Goulding*
v. *Horbury*, 85 Me. 227 (27 Atl. 127, 35 Am. St. Rep. 357);
*Devol* v. *Dye*, 123 Ind. 321 (24 N. E. 246, 7 L. R. A. 439);
*Thomas, Adm'r* v. *Lewis*, 89 Va. 1 (15 S. E. 389, 18 L. R.
A. 170, 37 Am. St. Rep. 848); *Grover* v. *Grover*, 24 Pick.
261 (35 Am. Dec. 319); *Coleman* v. *Parker*, 114 Mass. 30;
*Hagemann* v. *Hagemann*, 90 Ill. App. 251; *Stephenson's*

*Administrator* v. *King*, 81 Ky. 425 (50 Am. St. Rep. 173); *Gammon Theolog. Sem.* v. *Robbins*, 128 Ind. 85 (27 N. E. 341, 12 L. R. A. 506); *Fletcher* v. *Fletcher*, 55 Vt. 325; *Ross* v. *Draper*, 55 Vt. 404 (45 Am. Rep. 624). Where the intent to bestow is obvious and clear, and the language and deportment of the donor indicate a belief upon his part that he has done all that is necessary to accomplish his purpose, they come to the aid of the act of delivery, if slight and ambiguous, but not to dispense with it as an essential element of a valid gift: Thornton, Gifts, § 148. And a delivery by a father to a child in pursuance of an intended gift may be established by less positive and unequivocal proof than is required where the fact is at issue between strangers: *Schwindt* v. *Schwindt*, 61 Kan. 377 (59 Pac. 647); *Love* v. *Francis*, 63 Mich. 181 (29 N. W. 843, 6 Am. St. Rep 290).

Aided by these authorities and the principles and rules of law which they announce, we will determine whether the fact of delivery may be reasonably deduced from the facts in evidence. There was not a manual delivery or an actual transfer of the money from the hand of the father to the hand of the daughter. If there was a delivery at all, it was constructive. The manual possession was not in the father at the time, although he had it constructively, the money being deposited upon the premises then in his possession and under his control. The places of deposit were known to him only, and the secret was his protection from plunder. Being barely able to walk to the garden, a place apart from all other persons, he there imparted to his daughter the information as to the whereabouts of the money by pointing out to her definitely and particularly the several localities in which it was concealed, with a positive and unequivocal declaration that he gave it to her, and that it was hers, cautioning her not to let any one else know where it was, and advising her at the

same time to leave it there until the place was rented, or until she needed it. The delivery was as complete as the circumstances of the case would permit. He was physically unable to disinter the coins, and it was not advisable for the daughter to attempt to do so, as it might have led to a discovery of the deposits by others, and this he evidently deemed unnecessary for a full accomplishment of his undoubted purpose of bestowing the money upon his daughter. The taking of the money subsequently by her would not have been attended with the commission of a trespass, and the gift would assuredly have been complete if she had taken manual possession thereof during his lifetime. Was the delay in this respect a fatal oversight on her part? She accepted the money when he made his declarations of the gift to her, and it was so understood between them. It seems to us, therefore, that the delivery was as perfect and complete as the nature of the property, the situation of the parties, and the circumstances of the case would permit. By imparting to the daughter the information as to the location of the deposits by specifically pointing them out to her, he, in effect, gave her the key to his safety vault—employing the very apt figure of speech of one of the counsel for appellants—whereby she was enabled to unlock it, and take the deposits therefrom. The vault was not in his immediate presence, nor could he safely, or by reason of his physical infirmity, go to it, so that he could reach in and take the money and hand it to her, nor was it convenient or prudent for her to take it from out the vault at once, or prior to his decease, so that it remained there without molestation until removed as shown by the testimony, each of the parties believing without doubt that the gift was a thing fully accomplished. This, to our minds, was a good delivery, constructive though it was, and the property in the money passed to the daughter at the time, and henceforth it was her right

to take it, and do as she liked with it. The case should, therefore, have gone to the jury for them to determine as to the credibility and weight of the testimony adduced by the parties to establish their respective contentions. The case of *Liebe* v. *Battmann*, 33 Or. 241 (72 Am. St. Rep. 705, 54 Pac. 179), in no wise conflicts with these views.

3. Nor can the defendants' claim of ownership of the money be regarded as a claim against an estate of a deceased person, within the meaning of Section 1161 B. & C. Comp., requiring satisfactory evidence other than the testimony of the claimant to establish it. Reversed, and remanded for such other proceedings as may seem proper, not inconsistent with this opinion.        REVERSED.

Decided 27 July, rehearing denied 7 December, 1903.