### AS TO THE VALIDITY OF GIFTS INTER VIVOS.

Court of Appeals for Columbiana County.

ZILPHA R. AMBLER, ADMINISTRATRIX, ET AL

v. J. C. BOONE, ADMINISTRATOR.

Decided, April 9, 1914.

*Gifts—Test as to the Validity of, Where Made Inter Vivos, is Surrender of Dominion—Retention of Dominion Over Money by Taking Conditional Promissory Notes Upon Which Suit Was Brought by the Administrator.*

1. When money is given intending to make a gift, but at the same time the donee's note is taken for the amount given payable to donor on demand, and containing therein a stipulation that the note was not negotiable and void in the hands of any other party, except the payee, and in case no demand is made by payee before her death, it shall be considered paid in full and void as against her estate; and providing that the only way demand for payment can be made by payee hereof shall be by leaving this note with the cashier of certain banks with instructions given in person by payee to collect the same, does not make a valid gift *inter vivos*, where the payee retained possession of the note at her death, but it becomes an asset of her estate.

2. To constitute a gift *inter vivos*, there must be an immediate and irrevocable delivery of the property and a relinquishment of all dominion over or right to recall the gift.

*Carey & Armstrong*, for plaintiffs in error.
*J. C. Boone* and *C. S. Speaker*, contra.

POLLOCK, J.; METCALF, J., and NORRIS, J., concur.

The defendant in error brought an action in the court of common pleas of this county against the plaintiff in error on two promissory notes. The first note reads as follows:

"SALEM, OHIO, November 23, 1898.

"On demand after date for value received, we promise to pay Frances Ann Phillips, the sum of seventy-seven hundred and fifty ($7,750) dollars without interest.

"This note is not negotiable, and is absolutely void in the hands of any other party than Frances Ann Phillips, as against the maker thereof. In case no demand is made for the payment of this note by Frances Ann Phillips, the payee herein, before her death, this note shall be considered as paid in full, and after the death of said Frances Ann Phillips, payee herein, shall be void as against the makers herein or his estate. The only way in which demand for the payment of this note can be made by the payee herein before her death, shall be by leaving this note with the cashier of the First National Bank of Salem, Ohio, or the cashier of the Farmer's National Bank of Salem, Ohio, with instructions to said cashiers, given in person by said payee herein to collect the same.

"HANNAH L. TOLERTON,
"SARAH E. BUCK,
"ZILPHA ROSELIE TOLERTON."

No payments are endorsed on this note.

The second note is the same as the first mentioned except that it calls for $3,000, with interest at the rate of five per cent, per annum, payable annually. Payment of interest is endorsed on this note up to November 23d, 1903.

One of the makers of these two promissory notes, Hannah L. Tolerton, is the widow of James Tolerton, and the remaining makers are the daughters of James Tolerton. James Tolerton died about December 17th, 1897, leaving a will, and by his will he devised all of his property to his wife and two daughters—the makers of these promissory notes.

Frances Ann Phillips, the payee of these notes, was a sister of James Tolerton, and she was married to A. H. Phillips in

1866. They continued to live together as husband and wife from that time to the time of her death in November, 1904. At the time of her death she had no children living, nor their direct heirs. Prior to the death of James Tolerton, Mrs. Phillips gave to him the amount of money represented by these two notes, and took from him two promissory notes exactly like the notes signed by the defendants below.

After the death of James Tolerton, Mrs. Phillips told the defendants below that if they were going to divide up the estate of her brother she wanted live notes, and the present notes were then given by the defendants in lieu of the ones she held given by James Tolerton.

Mrs. Phillips gave this money to her brother intending, unless it should be demanded by her during her lifetime, that it should be a gift to him. About the time that she gave this money to her brother James, she gave something near the same amount to her remaining brother, taking from him notes similar to the ones in suit. She said that she gave this money to her brothers because she wanted her money to remain in the Tolerton family, and did not want any of it to go to her husband. She even sought legal advice whether she could make a will and deprive her husband of all rights in her property. At the time the notes in suit were executed by the defendants below no money was paid to any of them, and the only consideration for the giving of these notes was the release by Mrs. Phillips of her claim against the estate of James Tolerton. The making of these notes was intended by Mrs. Phillips, and the widow and daughter, as a transfer of the gift made to James Tolerton to his widow and daughters, upon the same conditions as he had received the money.

The notes involved in this action, after the death of Mrs. Phillips, were found in her private box in the Farmers' National Bank in Salem, Ohio, with other private papers belonging to Mrs. Phillips. These notes were in a sealed envelope marked, "H. L. Tolerton." Mrs. Phillips died while in the city of St. Louis. Before leaving home she had given Mrs. Ambler, one of the defendants below, the key to this private

box, and an order on the bank to deliver the box to Mrs. Ambler, with directions to Mrs. Ambler that in case of her death Mrs. Ambler should secure the box and destroy these notes. These directions were not carried out by Mrs. Ambler.

A. H. Phillips, the husband of Mrs. Phillips, had no knowledge during her lifetime that she had given her money to her brothers. Neither had he any knowledge of the notes given by her brothers, or of the notes given by the defendants below to her as evidence of this money. James Tolerton left an estate sufficient to pay all of his indebtedness, including the notes held by Mrs. Phillips referred to above.

A jury was waived in the court below and the case submitted to the court, resulting in a judgment in favor of the plaintiff below.

In giving this money to her brother, Mrs. Phillips intended to make a gift to him, unless during her life she should for some reason change her intention and should personally demand the payment of these notes. She was unwilling to part with her property at that time, or to surrender her right to demand its return. The question then arises, did the giving of this money unrevoked by the personal act of Mrs. Phillips prior to her death, make a valid gift, or did the retention by Mrs. Phillips of the right to demand payment destroy the necessary elements of the gift *inter vivos,* and leave nothing more than the intention to make a gift?

In order to make a valid gift *inter vivos* there must be a voluntary and absolute delivery of the property, and all control and dominion over the property must be relinquished. *Phipps* v. *Hope,* 16 O. S., 586, 595; *Flanders* v. *Blandy,* 45 O. S., 108, 113; *Worthington* v. *Redkey,* 86 O. S., 128.

In the case last cited Justice Davis, in the opinion on page 134, says:

"Whether a gift is *inter vivos* or *causa mortis* * * * there must be such a distinct and absolute delivery of the property as to show a relinquishment of all dominion over the property by the donor."

Of the many cases in other jurisdictions which have affirmed this rule we will only note the following: *Dauhispeck* v. *Biggs,*

71 Ind., 255; *Richardson* v. *McNulty,* 24 Cal., 139; *Walsh Appeal,* 122 Pa. St., 177 (15 Atl., 470); *Liebe* v. *Battman,* 55 Pac., 179, 180; *Lusenbigler* v. *Gourly,* 59 Pa. St., 166 (94 Pa. Amer. Dec., 51); *Smith, Admr.,* v. *Dorsey,* 38 Ind., 541 (10 Amer. St., 118); *Calvin* v. *Free,* 71 Pac., 823.

In the opinion in this last case on page 825 the court, after quoting the definition of a gift *inter vivos* as given in the 14 American & Eng. Enc., second edition, 1015, say:

"This definition implies that the donor must, at the time of making the gift, part with all dominion over it; that he can not make a valid gift of this character and yet retain to himself the right to recall or redirect it. The gift must be absolute and irrevocable."

Again, in the case of *Rodemer* v. *Rettig,* 71 Southwestern, page 869 (Kentucky), which was an action on a note after the death of the payee, containing a provision that the note should become null and void on the death of the payee, it was held that it did not constitute a gift *inter vivos.* In the opinion in that case on the same page the court say:

"It is essential to the validity of a gift *inter vivos* or *causa mortis* that there shall be a delivery to the donee, and the property or thing given must immediately pass and be irrevocable by the donor."

Without doubt, Mrs. Phillips when she gave this money to her brother intended that it should become her brother's at her death, and to deprive her husband of his right to inherit it; but she was unwilling to surrender her personal right to demand and retake possession of this money at any time during her life. From the time she gave the money to her brother, up until the moment of her death, the money which the notes represented was her property, and she never relinquished her ownership in it. Her act in giving the money to her brother was nothing more than an attempt to make a testamentary disposition of her property without following the legal requirements of this state. It did not become a gift during her life for the reason that she was not willing to, and did not, lose control of it.

While she delivered the money to her brother, yet she retained a right to recall that delivery and retake the property at any time.

But it is urged that she delivered the money to her brother without retaining the right to repossess herself of this money; that all she did was to retain the right to demand and receive the equivalent of what she had given. But we must remember that money is not itself property, but is only a circulating' medium which represents property. When she retained the right to compel her brother to pay her back an equal amount of money, she was retaining the right to repossess herself of the thing given, just the same as if she had given a specific article of personal property with the right to demand a return of that property. She gave that which represented property, and received the right to demand the return of that which represented property.

Our attention has been called to the cases of *Perrin Ex's* v. *Chandler,* 17 L. R. A. (New Series), 1239, which was an action by an executor to collect a note, with a forfeiture clause, on the death of the payee, something similar to the notes in this action; and also to the case of *Sabrell* v. *Couch,* 55 Ind., page 122, which was an action upon a mortgage, after the death of the mortgagee, containing a provision that it was only to be paid when demanded by the mortgagee in person.

In both of these cases it was held that they could not be collected after the death of the payee and mortgagee, but in neither of these cases does the court discuss the proposition as to what is required in order to constitute a valid gift *inter vivos;* but in these cases the court seems to have overlooked the rule that in order to make a gift not only delivery must be made, but the delivery must be irrevocable, and all control and dominion over the property must be surrendered.

The rule requiring an irrevocable delivery and a surrender of all control over the thing given, in order to make a valid gift *inter vivos,* has been applied without exception by the Supreme Court of this state whenever that question has been before the court.

In addition to the failure to deliver this money irrevocably, and to surrender the right to retake it, there is the further element of fraud in the act of Mrs. Phillips upon her husband. She gave her property to her brothers in order to keep it in her family, and deprive her husband of his marital rights in it. And in order to better secure the carrying into effect of this intention at her death, she provided for the destruction of the evidence of indebtedness in case of her death while away from home.

The law recognizes the right of the owners of personal property to dispose of it as they think best during their life, even to the making of a *bona fide* gift of it, providing the gift is not made in expectation of death, and with a view to defeat the husband or wife of their right in the property. *Stone* v. *Stone,* 18 Mo., 390; *Tucker* v. *Tucker,* 19 Mo., 350; *Manikee* v. *Beard,* 85 Ky., 20.

"A conveyance by the husband shortly before his death of all his property, both real and personal, to his children, without any valid consideration and with the intent to defraud his wife of her dower and her share of the personal estate, securing at the same time to himself the possession, use and control of it during his life, is fraudulent against the claims of the wife and will be set aside. *Thayer* v. *Thayer,* 14 Ver., 107.

While our own Supreme Court has not passed directly upon this principle, yet in the opinion in the case of *Doyle* v. *Doyle,* 50 Ohio St., 345, it is referred to favorably. Courts will not lend their assistance, by relaxing the rules required to make a valid gift, in order to carry into effect the intention to make a gift where the result would be to deprive the husband or wife of their rights in the property of the other.

"Our laws relating to written and nuncupative wills, and our laws of descent, should not be defeated by such gifts unless in a very clear case." *Miller* v. *Anderson,* 43 Ohio St., 473.

But it is urged that even if the giving of this money by Mrs. Phillips to her brother was an attempt to make a gift which has failed, yet the transaction between the defendants below and Mrs. Phillips was a contract by which she agreed to surren-

der her claim against the estate of James Tolerton on condition that these defendants, who were the beneficiaries under his will, should enter into the agreement evidenced by these two notes.

Without doubt parties could enter into an agreement, for a proper consideration, by which they agreed to pay the amount evidenced by such an instrument, if demanded according to the terms of the instrument, and should not be required to pay under any other conditions; but an examination of the testimony in this case develops the fact that that was not the transaction that these parties were entering into. All Mrs. Phillips was doing, or the defendants were accepting, was a transfer of the intended gift to them that she had previously made to her brother, and on the same terms and conditions that she had attempted to make it to her brother.

. Mrs. Phillips looked upon this transaction as an intended gift, unless she should desire to use the money otherwise during her lifetime, and these people accepted it and made the two notes in this suit with that same object in view.

For these reasons we think they stand in the same relation to this transaction that James Tolerton would have done had he outlived his sister.

Our conclusion is that however clear the intention of Mrs. Phillips may appear to have been to give the money represented by these notes to her brother, and after his death to his wife and children, the transaction lacks the necessary elements to establish a valid gift. The judgment of the common pleas court is affirmed; no penalty. Defendant excepts.