Argued 14 October; decided 27 October, 1902.

## DENEFF v. HELMS.

[70 Pac. 390.]

GIFTS INTER VIVOS AND CAUSA MORTIS.

1. The distinction between gifts *inter vivos* and *causa mortis* is that the former must be absolutely and irrevocably effective during the life of the donor, while the latter are subject to be defeated by changes of conditions; delivery being, of course, necessary in both cases.

CONDUCT SHOWING A GIFT CAUSA MORTIS.

2. Deceased, shortly before his death, owned a deposit in a private bank and another in the hands of N. The day before his death he called N, and H, and the banker, to his bedside, and there announced in the presence of them all that he gave to H everything he had, and that H should care for him as long as he lived, and after his death should pay all charges, pay himself liberally, and, if anything remained, send it to the deceased's sister

42 OR.—11

in Germany. He then indorsed the certificate of deposit to H, and ordered N to deliver the money to him. H procured the money from N and from the bank the same day, and deceased died the succeeding day. *Held,* to constitute a valid gift to H *causa mortis,* and not an attempted testamentary disposition.

GIFTS CAUSA MORTIS—PUBLIC POLICY.
3. Gifts made in the consciousness of impending death, for lawful purposes, or to relatives and friends, are not against public policy, and will be upheld when sufficiently proven.

From Jackson: HIERO K. HANNA, Judge.

William Deneff, as the administrator of the estate of Edward Graupner, deceased, instituted this action against H. V. Helms to recover the sum of $2,200, which, it is alleged, he converted to his own use. Helms answered, basing his right to the money upon a gift *causa mortis,* made to him by Graupner while in conscious peril of dissolution for the following purposes, to wit, to pay the just and legal debts of the donor, to pay himself and family liberally for their care and attention bestowed upon him during his illness, and to send whatever balance there might remain to his (Graupner's) sister in Germany. Before trial H. V. Helms died, and Edward Helms, as administrator of his estate, was substituted as defendant. When the cause was called for trial, a jury was waived, and the court, after hearing the evidence, made, among others, the following findings of fact: "That on the 8th day of February, 1899, one Edward Graupner, then a resident of Jackson County, Oregon, was the possessor and owner of $2,200 in money, $2,000 of which was in the bank of Beekman & Reames, and for which the said Graupner held their certificate of deposit, and $200 of the first mentioned sum was in the hands of Judge J. R. Neill; that on the said last-mentioned date the said Edward Graupner was dangerously ill, and there had assembled at his bedside the following named persons, viz., Judge J. R. Neil, T. G. Reames, and H. V. Helms; that the said Edward Graupner then and there announced in the presence and hearing of all of said parties that he gave to H. V. Helms all and everything he had, that said Helms should care for him as long as he lived, so that he could have what was necessary, that after his death Helms was to pay all charges, pay himself liber-

ally, and, if anything remained, he was to send it to his (Graupner's) sister in Germany; that H. V. Helms assented to receiving said property, and agreed to comply with the conditions named; that, in order to carry out his wishes, the said Edward Graupner then and there, in the presence of all of said parties, indorsed said certificate of deposit so that it was made payable to said H. V. Helms, and then delivered the same to said H. V. Helms, and at the same time orally directed T. G. Reames, of the banking firm of Beekman & Reames, to pay the amount due on said certificate of deposit to H. V. Helms; and at the said time and place, and in the presence of all of said parties, orally instructed Judge J. R. Neil to pay over to said Helms the said $200 in his hands belonging to said Graupner; that the said Edward Graupner was at said date of sound mind and memory, and he then parted with all dominion and control of all of said money; that subsequently, to wit, on said 8th day of February, 1899, the said H. V. Helms presented said certificate of deposit to the bank of Beekman & Reames, and received thereon said sum of $2,000, and on said date Judge J. R. Neil paid over to said Helms the said sum of $200; that said H. V. Helms, on said 8th day of February, 1899, took and retained entire possession and control of all of the sums of $2,200; that afterwards, to wit, on the 9th day of February, 1899, the said Edward Graupner died; that prior to the filing of plaintiff's complaint the said H. V. Helms served a notice on plaintiff that he was ready, willing, and able to pay all just debts of said Edward Graupner, deceased.'' Judgment was for the defendant, and plaintiff appeals.            AFFIRMED.

For appellant there was a brief over the names of *Austin S. Hammond, Charles Prim* and *A. N. Soliss,* with an oral argument by *Mr. Prim.*

For respondent there was a brief over the names of *William M. Colvig, A. Evan Reames,* and *J. R. Neil,* with an oral argument by *Mr. Colvig.*

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

This being an action at law, we are confined to the consideration of the question as to whether the facts found by the court support the judgment. In his argument plaintiff's counsel proceeded upon the hypothesis that, if the transactions between the deceased and Helms were adequate to the consummation of any gift, it was a *donatio causa mortis,* thus conceding in effect that it was made on the part of the donor in the conscious existence of impending peril of death, and in view of dissolution. This eliminates further inquiry as respects the first essential to a valid gift *causa mortis.* Nor is there any contention that the money was not actually delivered by Graupner in person to Helms, but plaintiff's strong contention is that the transactions were effective merely to constitute Helms the agent of the deceased to carry out his will respecting the money thus intrusted to him; that is to say, to pay all his lawful debts, and to send the balance, if any remained, to his sister in Germany. He contends further that the gift was not absolute and *in praesenti,* but to take effect at his death, and was, if anything, an attempted testamentary disposition of the funds, and, not having observed the formalities essential to the valid execution of a will, is void under the statute.

1. The real nature of a gift *causa mortis,* relative to the time of its taking effect, has been in times past a subject of controversy, but it is now well settled that such a gift is operative to transfer the title and vest it in the donee at once. It is said, however, that it is ambulatory, conditional, and incomplete during the life of the donor, because it is subject to be devested by the happening of any one of several conditions, namely, revocation by the donor, his survival of the apprehended peril, or of the donee, or the want of sufficient assets to discharge his debts and liabilities. The circumstance that the gift is ambulatory and inchoate until the death of the donor does not render it a testamentary disposition of the property concerned, but is a condition annexed thereto, without which it would be fraudulent as to creditors. The essential difference, therefore, between a gift *inter vivos* and a *donatio causa mortis* is that the former must take effect during the life of the donor absolutely,

completely, and irrevocably, while the latter, although a present transfer of title, is incomplete, and subject to be defeated by the happening of any one of the conditions above enumerated; delivery, actual or constructive, being essential in either case: *Liebe* v. *Battmann,* 33 Or. 241 (54 Pac. 179, 72 Am. St. Rep. 705); *Ridden* v. *Thrall,* 125 N. Y. 572 (26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758); *Basket* v. *Hassell,* 107 U. S. 602 (2 Sup. Ct. 415). A delivery to an agent is clearly but a delivery to his principal, and the agent's possession is that of the principal to do with the property as the latter may direct. And the same is true where the delivery is made by the principal to his agent; the custody and control is still that of the principal, under the familiar maxim, *Qui facit per alium facit per se.*

2. This is the turning point of the present controversy. Did the deceased deliver the property to Helms to be disposed of as his agent, and under his direction, still retaining the dominion and control over it, as well as the present ownership, or did he deliver it to him absolutely, intending thereby to devest himself of title, and transfer it to Helms, or the sister in Germany; and, if to the latter, did he constitute Helms her agent or his own? There seems to be no legal objection to a delivery to an agent or trustee for the donee, the gift being valid in such instance, although the donee does not at the time declare his acceptance thereof. It is sufficient if he avails himself of the provision when it becomes known to him, even subsequent to the decease of the donor: *Sessions* v. *Moseley,* 4 Cush. 87; *Dresser* v. *Dresser,* 46 Me. 48; *Devol* v. *Dye,* 123 Ind. 321 (24 N. E. 246, 7 L. R. A. 439). Not so as to a gift *inter vivos.* It being in the nature of a contract, but without consideration, and the donee being a party thereto, acceptance became essential to its validity: Thornton, Gifts, § 3. A delivery to a third person with instructions to deliver to the intended donee at the death of the donor, the latter retaining dominion and custody over the property in the meanwhile is ineffectual as a gift in either case, because the third party is constituted merely the agent or bailee of the donor. Such a transaction is regarded

as an attempted testamentary disposition, unless accompanied by writing executed as a will, and is nugatory for the purpose designed: *Smith* v. *Ferguson,* 90 Ind. 229 (46 Am. Rep. 216); *Walter* v. *Ford,* 74 Mo. 195 (41 Am. Rep. 312); *McCord's Adm'r* v. *McCord,* 77 Mo. 166 (46 Am. Rep. 9); *Daniel* v. *Smith,* 75 Cal. 548 (17 Pac. 683); *Hart* v. *Ketchum,* 121 Cal. 426 (53 Pac. 931); *Knight* v. *Tripp,* 121 Cal. 674 (54 Pac. 267); and *Basket* v. *Hassell,* 107 U. S. 602 (2 Sup. Ct. 415). In *Smith* v. *Ferguson* the donor delivered and intrusted the property involved, consisting of eight promissory notes, to one Fred Ferguson, and contemporaneously directed him to take the notes, and do the best he could with them, furnish her with the money she needed to live on, and after her death pay what debts she owed, erect a monument for her, and give Clarinda Ferguson what was left, declaring the same to be hers. Subsequently Ferguson executed to the donor a receipt showing that the notes were held in trust for her. Considering all that was done, there was no delivery absolute or surrender of the dominion over the property with the intent and purpose of passing the title. It was rather intrusted to Ferguson to do with it as the donor directed, thus creating the relation of principal and agent, nothing more; and it was construed as an attempted testamentary disposition without the necessary formality of a valid will. So in *Walter* v. *Ford* the donor, in his last illness, delivered a bank check to another, with directions to deliver it to a third party on the drawer's death, but to return it to the drawer if he should recover, and nine days afterward the drawer died, and the check was delivered to the payee; and in *McCord's Adm'r* v. *McCord* "a father"—quoting from the headnote of the case—"in his last illness placed a package of money in the possession of his son to take care of, and some days afterward directed the son, in case he should not get well, to take the money, and, after paying funeral expenses, etc., to divide the remainder equally between himself and certain of his brothers and sisters;" and it was held in each instance that the transaction did not constitute a gift, but was an ineffectual attempt at a testamentary disposition of the property.

The California cases cited are of the same character. In *Basket* v. *Hassell* a certificate of deposit was delivered to the alleged donee under a qualified indorsement: "Pay to Martin Basket, of Henderson, Ky.; no one else; then not till my death. My life seems to be uncertain. I may live through the spell. Then I will attend to it myself." The court say of the transaction that "the property in the fund did not presently pass, but remained in the donor, and the donee was excluded from its possession and control during the life of the donor. That qualification of the right which would have belonged to him if he had become the present owner of the fund establishes that there was not a delivery of possession according to the terms of the instrument, and that, as the gift was to take effect only upon the death of the donor, it was not a present executed gift *causa mortis*, but a testamentary disposition." It may, therefore, be predicated of these authorities that, if the gift is not to take effect as an executed and completed transfer to the donee of possession and title, either legal or equitable, during the life of the donor, but the property is intrusted merely with other parties to be disposed of at his death, as he may or shall have directed, it becomes a testamentary disposition, dependent for its validity upon being made, executed, and proven as a will. If, however, the donor, upon the other hand, being in ill health, and apprehensive of death, in view of such condition and apprehension delivers the property to a third person absolutely, thereby relinquishing all right to the possession and dominion over it, for the use of the donee under such circumstances as to indicate a present intention of transferring title to the latter, the gift is valid, and will be upheld. The fact that there is a possibility of the donor's recovery and his repossessing himself of the property is not obnoxious to the gift. These are conditions, as we have seen, implied though they may be, attendant upon such a gift that do not render the transaction testamentary, or the disposition a legacy, and nugatory, because not executed as a will: *Grymes* v. *Hone*, 49 N. Y. 17 (10 Am. Rep. 313). To the same purpose are *Devol* v. *Dye*, 123 Ind. 321 (7 L. R. A. 439, 24 N. E. 246) ; *Sessions* v. *Moseley*, 4 Cush. 87 ;

*Wells* v. *Tucker,* 3 Bin. 366; *Pierce* v. *Boston Sav. Bank,* 129 Mass. 425 (37 Am. Rep. 371).

Now, the effect of the findings of fact of the trial court is that Edward Graupner, on the day previous to his death, in the presence of certain persons named, declared that he gave H. V. Helms everything he had; that Helms should care for his as long as he lived, so that he could have all that was necessary, and after his death ·pay all charges, pay himself liberally, and send what remained to Graupner's sister in Germany; and that Helms assented thereto, and agreed to comply with the· conditions imposed. · There was an immediate indorsement of the certificate of deposit of the $2,000, and delivery thereof to Helms, which, being symbolical, constituted a present transfer of that portion of the funds into the possession of Helms, who subsequently and on the same day actually possessed himself of the money by receiving it from the bank upon presentation of the certificate. The remaining $200 was actually delivered to him by Judge Neil under the express directions of the donor. So that here, the donor dispossessed himself of the property absolutely, parting with all control and dominion over it, and died on the following day. It is clearly manifest from what he said and did that it was his present purpose to part with the title to the money, and bestow it upon his sister, after the payment of the specific expenses and charges, which he directed Helms to see to. The directions were without reservation, and their performance depended upon no conditions. It may be assumed that the charges referred to were to be satisfied, and · the balance remaining of the fund paid to his sister after ·his death; but this is no objection to the gift, there being a present transfer of dominion with the intent and purpose of devesting himself of title and conferring it upon another. The sister in Germany was constituted the real beneficiary or donee, and Helms a trustee for her, to execute the trust reposed in him.

3. It is further urged that gifts *causa mortis* are not favored· by law, because of the opportunity afforded for the perpetra-- tion of fraud upon estates of deceased persons through false swearing. Even if this be true, the case at bar is made so full

and plain as to leave no doubt touching the real purpose of the deceased. We are not left to inference or presumption, but are dependent upon the findings of the trial court, which are clear, and leave no room for two opinions. Such a gift is not contrary to public policy, and will be upheld when established: *Ellis* v. *Secor*, 31 Mich. 185 (18 Am. Rep. 178). It is not sought to defeat the gift on account of any existing indebtedness of deceased, but recovery is predicated solely upon plaintiff's right, as administrator, to the possession of the funds for administrative purposes; but the same having been disposed of in Graupner's lifetime by valid gift, are not assets of the estate, and plaintiff is therefore not entitled to them.

AFFIRMED.

Decided 27 October; rehearing denied 8 December, 1902.