Argued June 24, affirmed July 7, costs taxed July 28, 1925.

# FRANK S. MILLER v. THE MEDFORD NATIONAL BANK ET AL.

### (237 Pac. 361.)

**Gifts—Gifts Causa Mortis or Inter Vivos not Consummated Without Delivery of Thing Given.**

1. A gift *causa mortis* or *inter vivos* cannot be consummated without a delivery of the thing given.

**Gifts—Gift Consummated by Transfer of Possession and Dominion Over Subject of the Gift.**

2. A gift is consummated by transfer of possession and dominion over subject of the gift.

**Gifts—Gift of Certificates of Deposit Held Invalid.**

3. Gift of certificates of deposit in bank, to take effect after donor's death, *held* invalid, where there was no delivery by alleged donor to alleged donee of certificates or of money represented thereby.

**Assignments—Check not an Assignment of Amount for Which Given Until Bank has Paid or Obligated Itself to Pay It.**

4. A check of itself does not operate as a legal or equitable assignment of amount for which it is given, until bank has either paid or obligated itself to pay it, unless it is a certified check.

---

1. Delivery sufficient to support gift, see note in 50 Am. Rep. 178. See, also, 12 R. C. L. 932.

3. Gift *causa mortis* of savings bank deposit, see notes in 26 Am. Rep. 684; 48 Am. Rep. 506. See, also, 12 R. C. L. 946.

4. Gift by assignment of fund or check on banks, see note in 26 Am. Rep. 684.

Check an assignment of fund, see note in 19 Am. St. Rep. 609.

Check as valid gift *inter vivos*, see notes in Ann. Cas. 1912A, 330, 26 L. R. A. 305; 27 L. R. A. (N. S.) 308; L. R. A. 1918C, 340; —— as gift *causa mortis*, 10 Ann. Cas. 475; —— donor's own check, 20 A. L. R. 177. See, also, 12 R. C. L. 945, 966.

**Banks and Banking—Authority to Pay Check Revoked on Death of Drawer, Where Check Does not Operate as an Assignment.**

5.   Where check does not operate as an assignment, authority to pay it is revoked on death of drawer.

**Principal and Agent—Revocation of Agent's Authority by Death of Principal Effective as to Agent Only from Time He has Notice of It.**

6.   Generally, revocation of an agent's authority by death of his principal takes effect as to agent only from time agent has notice of it.

**Banks and Banking—Bank Precluded from Paying Check, by Direction to Pay Same After Death of Maker Thereof.**

7.   Where check directed bank to pay certificates of deposit to plaintiff after death of maker of check, which thereby precluded bank from paying it before her death, bank was thereby precluded from paying check at all.

**Banks and Banking—Direction Held to Preclude Execution of Gift, or Its Going into Immediate Effect During Lifetime of Decedent.**

8.   Where bank was directed to turn over to plaintiff decedent's time deposit account in case of her death, thereby expressly conditioning delivery of certificates on death of decedent, such direction precluded execution of gift, or its going into immediate effect during lifetime of decedent.

**Gifts—Delivery During Donor's Life is Essential to a Gift Causa Mortis.**

9.   Delivery of subject of gift during lifetime of donor is essential to a gift *causa mortis*.

**Gifts—Gift Causa Mortis, not to be Consummated Until After Death of Donor, is Void, Unless Given by Will.**

10.   An attempted gift *causa mortis*, which is not to be consummated until after death of donor, is. void, unless it is given by a written will, executed as required by statute.

---

See (1) 28 C. J. 630, 689.   (2) 28 C. J. 634, 691.   (3) 28 C. J. 701.
(4) 5 C. J. 920, 928.   (5) 7 C. J. 702.   (6) 2 C. J. 539, 548.   (7)
7 C. J. 702; 28 C. J. 701.   (8) 28 C. J. 689, 695.   (9) 28 C. J. 695.
(10) 28 C. J. 689.

5.   See 5 R. C. L. 529.

6.   Validity of agent's acts after death of principal, see note in 39 Am. Dec. 81.   See, also, 21 R. C. L. 822.

9.   See 12 R. C. L. 958.

10.   Law governing validity of gift *causa mortis*, see note in Ann. Cas. 1912C, 272.

From Jackson: James W. Hamilton, Judge.

Department 1.

Affirmed.        Costs Taxed.

For appellant there was a brief and oral argument by *Mr. G. M. Roberts.*

For respondents there was a brief and oral argument by *Mr. W. R. Gaylord* and *Mr. L. W. O'Rourke;* for respondent Otis Sevedge there was a brief over the name of *Mr. H. A. Canady.*

RAND, J.—This is a suit to enforce an alleged gift *causa mortis* and grew out of the following facts: On March 29, 1922, one Mary Sevedge was the holder of five certificates of deposit for $200 each, which had been issued and delivered to her by the defendant bank, and for safekeeping had been left in the custody of the bank at Medford, Oregon, where it conducts its business; she was a resident of Medford, Oregon, and was suffering with cancer from which she died on April 8, 1922, while in the State of California, where she had gone for medical treatment. Plaintiff was a brother of decedent, and Otis E. Sevedge, one of the defendants, was a foster-son. While in California, and on March 16, 1922, she made her last will and testament, naming said defendant as the sole devisee of all of her property, both real and personal, and as executor of said will. The will has been admitted to probate in Jackson County, Oregon, and letters testamentary have been issued to said defendant. On said March 29, 1922, while decedent was in California and said certificates were in the bank at Medford, Oregon, she signed and delivered to plaintiff two written instruments, of which the following are copies:

"Medford, Oregon, Mar 29 1922      No. 6
"THE MEDFORD NATIONAL BANK
. after my death
"Pay to the order of F. S. Miller            $1000.00
One thousand ...........................Dollars
"MARY SEVEDGE."

"Medford, Oregon, Mar 29 1922      No. ——
"THE MEDFORD NATIONAL BANK

in case of my death please turn my time deposit acc't over to my Brother F. S. Miller.

"MARY SEVEDGE."

Subsequent to the death of decedent and in May, 1922, plaintiff presented the above instruments to the bank and demanded delivery and payment to him of the certificates, and upon the bank's refusal to comply with his demand, instituted this suit, alleging that the transaction of decedent's execution and delivery of the writings accompanied by her declaration that she made him a gift of the money constituted a gift *causa mortis* and entitled him to the payment thereof.

The answer puts in issue all of the allegations of the complaint relating to the making of the alleged gift and affirmatively sets up the execution of the will, the order admitting the same to probate, and said defendant's ownership of the money under the provisions of the will. The sole question is whether the transaction referred to constitutes a gift *causa mortis.*

1. It clearly appears from the pleadings and proof that there was no delivery by the alleged donor to the alleged donee of the certificates or of the money represented thereby. Without a delivery of the thing given, either actual or constructive, a gift *causa mortis* or *inter vivos* cannot be consummated. With-

115 Or.—24

out such delivery the gift is incomplete, and an incomplete gift is nothing.

2. To consummate a gift there must be a transfer of possession and of the dominion over the subject of the gift. The law on this subject has been stated and restated so often by this court that it would answer no useful purpose to again restate it. The following cases are conclusive upon this question: *Liebe* v. *Battmann,* 33 Or. 241 (54 Pac. 179, 72 Am. St. Rep. 705); *Deneff* v. *Helms,* 42 Or. 161 (73 Pac. 390); *Waite* v. *Grubbe,* 43 Or. 406 (73 Pac. 206, 99 Am. St. Rep. 764); *Baker* v. *Moran,* 67 Or. 386 (136 Pac. 30); *Baber* v. *Caples,* 71 Or. 212 (138 Pac. 472, Ann. Cas. 1916C, 1025); *Hillman* v. *Young,* 64 Or. 73 (127 Pac. 793, 129 Pac. 124); *Allen* v. *Hendrick,* 104 Or. 202 (206 Pac. 733).

3. Plaintiff further contends that by executing and delivering the writings to plaintiff decedent did everything that it was possible for her to do to place it within the power of plaintiff to obtain the delivery and payment of the certificates by the bank, and that this constituted a sufficient delivery to sustain a gift *causa mortis.* Without the words "after my death" the instrument first referred to would be in the usual form of an ordinary check, but with these words inserted on the face of the instrument the bank was precluded from complying with the directions of the maker to pay the money during her lifetime.

4. The rule in this state is that a check of itself does not operate as a legal or equitable assignment of the amount for which it was given until the bank has either paid or obligated itself to pay it, unless it is a certified check: *Hunt* v. *Security State Bank,* 91 Or. 362 (179 Pac. 248).

5. Where a check operates as an assignment the death of the drawer will not revoke it, but where it

does not operate as an assignment the authority to pay the check is revoked upon the death of the drawer.

6. The general rule is that revocation of an agent's authority by the death of his principal takes effect as to the agent only from the time the agent has notice of it: 1 Morse on Banks and Banking (5 ed.), § 400.

7. By inserting into the check the direction to pay the same after the death of the maker thereof, which precluded the bank from paying it before her death, the bank was precluded from paying the check at all, for the rule is as stated by Mr. Morse in the section referred to, "But if the bank knows of the death of the drawer its right to pay his check has vanished, so say the authorities that do not regard a check as an assignment."

8, 9. By the terms of the second instrument the bank was directed to turn over to plaintiff decedent's time deposit account in case of her death.    The authority of the bank to make delivery of the certificate was thereby expressly conditioned upon the death of decedent, and the directions could not, by the terms thereof, be complied with during her lifetime.    This, and a similar direction contained in the first instrument, prevented the delivery to plaintiff of the subject of the gift during the lifetime of the donor which is also essential to a gift *causa mortis* as held by this court in the authorities above cited.    These directions precluded the execution of the gift or its going into immediate effect during the lifetime of decedent. "A gift *causa mortis,* like a gift *inter vivos,* must be completely executed and go into immediate effect." *Baber* v. *Caples, supra.*

10. An attempted gift *causa mortis* which is not to be consummated until after the death of the donor is

clearly void, unless it is given by a written will attested by witnesses and executed in the manner required by the statutes prescribing the manner and method of executing a will. The law does not permit such a testamentary disposition of property to be made, as was attempted in this case, in any other manner than by the duly executed will of the owner. Under the transaction proven the title remained in the donor up to the time of her death and was to pass after her death and clearly showed an intention upon the part of the donor to make a void testamentary disposition of her property by merely directing the disposal of it after her death.

The trial court held that the title to the property in question did not pass during the life of the donor, and that no valid gift was consummated. With this conclusion we agree, and for the reasons stated the decree entered in the court below must be affirmed.

AFFIRMED.   COSTS TAXED.

McBRIDE, C. J., and BURNETT and BROWN, JJ., concur.