Argued December 4; affirmed December 31, 1929

# SOLOMON GARDE *v.* SYBIL E. GOLDSMITH

(283 Pac. 39)

For appellant there was a brief over the names of *Mr. Allen H. McCurtain, Mr. Samuel R. Stern* and

*Mr. Donald E. Long,* with oral arguments by *Mr. McCurtain* and *Mr. Stern.*

For respondent there was a brief over the names of *Messrs. Carey & Kerr* and *Mr. Omar C. Spencer* with an oral argument by *Mr. Spencer.*

HAMILTON, Acting J. There were facts in the case showing that on July 10, 1918, Simon L. Selling executed a will, and, on July 26, 1923, a codicil thereto, whereby, after creating a trust fund for the benefit of his invalid sister Rose and making a few small charitable bequests, he devised and bequeathed his property in manner following: To the plaintiff and his wife jointly he bequeathed the sum of $5,000; to the daughter of plaintiff $5,000, and to plaintiff $1,000. The entire residue of his estate, in excess of $175,000 in value, he devised and bequeathed to his niece, Sybil E. Lippitt, now Sybil E. Goldsmith, the defendant herein.

It is claimed that thereafter, on September 24, 1923, said Selling executed a written order on his niece, the residuary legatee in said will, in words and figures following:

"Tacoma, Wn.,
September 24, 1923.

"Sept. 24, 1923.
"Sybil E. Lippitt,
San Francisco, Cal.

"I desire that you pay Solomon Garde (Solomon Garde) of Seattle, Wn., the sum of $20,000 twenty thousand dollars, and to come from amount I have invested at present in Crown Columbia Pulp & Paper Co. bonds, such sum to be paid after my sister's Rose Selling's death—

"Carrie out this wish in full.
"Simon L. Selling.

"I have no witnesses—I know you will fulfill my wish.
"(Over)

(Reverse side of instrument):

"Crown Columbia Pulp & Paper Co. Bonds or other securities issuing from amount bought from bonds that amount came from original amount that came or was procured from amount that I purchased from Crown Willamette Pulp & Paper Bonds.

"(Signed) Simon L. Selling",

and that he gave the order, enclosed in a sealed envelope, to the plaintiff herein about two weeks after its date, and advised plaintiff to take care of the same, saying:

"Solomon, here is something that I want you to take take care of. It will be worth something to you in case anything should happen to me. Put it away. If I should pass away at any time you open it, and you will find its contents will be of considerable value to you."

Upon this order, so addressed to the said Sybil E. Lippitt, this action is based.

Selling died on December 4, 1923, something more than two months after the execution of the order by him, and his sister Rose about a month later.

Did plaintiff, through the act of Simon L Selling in writing the said communication to Sybil E. Lippitt wherein he expressed the desire that she pay to Solomon Garde the sum of twenty thousand dollars, become entitled to collect that amount from her?

Garde, who was the half-brother of Simon Selling's mother, came at the age of 14 years to live with Simon and his parents at Oregon City, where they were engaged in conducting a clothing store. For 25 years he continued to live with the family and was employed by them in their store, receiving during this period a varying wage. Simon's father died in 1891, and the business was continued by his mother, with the help

of Simon and Garde, until her death in 1906. The following year the business at Oregon City was disposed of, and Simon and Garde moved to Portland, Oregon. Here they lived and Mr. Garde engaged in the retail clothing business for one year. Mr. Selling did not again engage in business after leaving Oregon City. In 1908 Mr. Garde was married. In 1909 he disposed of his business in Portland and removed to Seattle, Washington, and engaged in business there. Mr. Selling went with Garde and took adjoining rooms at the same hotel. The evidence shows that subsequent to that time Selling lived in the home of Garde practically until the time of his death. Very kindly relations existed between the parties. Garde's family were very considerate and attentive to Selling; and the evidence tends to show that Selling was very liberal with and fond of Garde's family. There does not appear to have been any contractural relations existing between them since Garde was in the employment of the Selling family when residing in Oregon City; so that if the claim made may be sustained, it shall be as a gift, either *inter vivos* or *causa mortis*. The words attributed to Selling as accompanying the order to the effect that Garde should put the same away; to open the envelope in the event of Selling's death and "you will find its contents will be of considerable value to you," indicate that the gift was intended to become effectual after death.

The statement of appellant's contention is as follows:

"The deceased clearly intended to make an absolute gift to plaintiff—whether in liquidation of his promise to compensate plaintiff for his services and care— whether a gift *inter vivos* or a gift *causa mortis*— whether the defendant became a trustee—whether the

enjoyment of the money was to come after the donor's sister's death—makes no difference. The intention of Selling should and will control."

In the analysis of the facts of the transaction which form the basis of plaintiff's demand upon defendant, and the application of the principles of the law thereto, it is necessary before plaintiff may recover that it appear as a conclusion therefrom that judgment against defendant is authorized.

■ It can not be successfully claimed that a trust estate in any fund or property was created by said order. While it is true that the owner and donor of personal property may create a perfect or complete trust by his unequivocal declaration in writing, or by parol, that he himself holds such property in trust for the purposes named, the crucial question where a voluntary trust in the settler is sought to be established is whether the declaration on which such a trust is sought to be predicated is sufficient: 26 R. C. L., p. 1182, cases cited.

In *Martin v. Funk,* 75 N. Y. 137, the court says:

"The question involved has been very much litigated, and many refinements may be found in the books in respect to it. Many cases have been found difficult of solution, not so much on account of the general principles which should govern, as in applying those principles to a particular state of facts. * * * The act constituting the transfer must be consummated, and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee."

The instrument itself does not indicate any intention to transfer any present interest. The only intent inferable is that the bonds were to remain the property

of Selling during his lifetime and were ultimately to vest in the niece, and through her action after she had acquired absolute ownership the plaintiff should become donee of the sum stated. The letter is ineffectual as a testamentary disposition of the property, and does not create a trust in plaintiff's favor which may be enforced against defendant. The record shows that the will herein referred to, by which the defendant is named as residuary legatee, antedated the order made in favor of plaintiff. The allowance of said claim must have the effect of violating the terms of the will, wherein and whereby the testator had, in the manner provided by law, disposed of his property, the title to vest upon his death. The will was regularly admitted to probate and the defendant was clothed with ownership of the property so bequeathed to her. Defendant's title was absolute, and the use and benefit of the property was for herself. There is attached to her holding no implied promise to pay this money to plaintiff.

Further than the fact that the defendant is a beneficiary under the will of Solomon L. Selling, is she in any way concerned with the said order so held by plaintiff other than that it is addressed to her. We are concerned with the question as to whether the delivery of said order held by plaintiff created a liability of any kind against defendant. It is plain that the residuary legatee under the will by the terms thereof received her bequest unincumbered with any charge against it in favor of plaintiff. But it is claimed that the said order with the attendant words and acts of Selling amounted to a gift in favor of plaintiff. It is admitted that neither the bonds out of which the money should have been paid nor the money itself were ever delivered to plaintiff, or to any one for him. So the

question of delivery of the property the subject of the alleged gift is an element for our consideration in connection with the averment that as a matter of law such gift could not take place without delivery to the donee. The law is well stated in the case of *Jackson v. Lamar,* 67 Wash. 388 (121 P. 857), as follows:

"While it is true the courts have relaxed the rigor of the old rules, they have never departed from holding that something more is required to constitute a gift, either *inter vivos* or *causa mortis,* than the expression of an intent or purpose to give. Evidence of such intent is admissible to prove the act, but it does not constitute the act, and delivery, either actual or constructive, is as essential today as it ever was. The donor must not only signify his purpose to give, but he must deliver, and as the law does not presume that an owner has voluntarily parted with his property, he who asserts title by gift must prove it by evidence that is clear and convincing, strong and satisfactory."

Aligned with what is here quoted is the judicial utterance of the State of Oregon in an opinion rendered by Mr. Justice RAND found in the case of *Miller v. Medford National Bank,* 115 Or. 366 (237 P. 361). The court there says upon this subject involving an analogous cause:

"It clearly appears from the pleadings and proof that there was no delivery by the alleged donor to the alleged donee of the certificates or of the money represented thereby. Without a delivery of the thing given, either actual or constructive, a gift *causa mortis* or *inter vivos* can not be consummated. Without such delivery the gift is incomplete, and an incomplete gift is nothing.

"To consummate a gift there must be a transfer of possession and of the dominion over the subject of the gift. The law on this subject has been stated and

restated so often by this court that it would answer no useful purpose to again restate it. The following cases are conclusive upon this question.''

Here follows citation of the Oregon decisions.

■ The court finds that the possession by plaintiff of the order hereinbefore referred to without delivery to him by the alleged donor of the property the subject thereof as shown in the evidence in this cause is ineffectual to vest in plaintiff a right to maintain any action at law or suit against defendant.

Other questions arising out of this controversy have been presented in the oral arguments and briefs of counsel, but their decision is unnecessary herein.

Finding the action of the lower court without error in dismissing plaintiff's complaint, the judgment is affirmed.

AFFIRMED.

COSHOW, C. J., and BEAN and BELT, JJ., concur.