Argued at Pendleton May 8; modified June 26; rehearing denied
July 24, 1934

# LAY *v.* PROCTOR ET AL.

(34 P. (2d) 331)

546

*J. S. Hodgin,* of La Grande, for appellant.

*H. E. Dixon* and *R. J. Green,* both of La Grande (Green & Hess, of La Grande, on the brief), for respondents.

CAMPBELL, J. The record in this case discloses that A. B. Daniel, now over 90 years of age, was a former resident of the state of Illinois. He was married and the father of two children, daughters, by his first wife, who died many years ago. The record discloses nothing further of these two daughters. Sometime after her death, he married a widow, 13 years his junior, with one son, Roy Lay. The issue of the second marriage was four children, Bertha L. Proctor

and Ivy C. Feldman, daughters, and Al Daniel and Reuben H. Daniel, sons. The record is silent as to what property A. B. Daniel or Jennie F. Daniel owned at the time of his second marriage. Since that time, it seems that he and his wife accumulated a considerable amount of property and money. As he grew older, his wife took a more active interest in the business affairs. The daughters of the present marriage seemed to have married early and to have established themselves in homes of their own. The record does not show at what time they left their parental home, but it was long enough ago so that they both have children who at the time of the trial herein had passed their age of majority.

About the year 1913, A. B. Daniel and his wife Jennie F. Daniel moved from Illinois and took up their home at Cove, Oregon. It appears that about that time or possibly earlier the son Reuben H. Daniel, who was then married, also moved to the same place. Roy Lay, the stepson of A. B. Daniel, also moved to the same place about the same time.

In the year 1929, and for many years prior thereto, Bertha L. Proctor was living in South Dakota. She was the mother of four children, two girls who had attained their majority and were supporting themselves. One, Audrey Proctor, as a school teacher, the other, Dorothy Proctor afterwards Dorothy Wittenmeyer, as a law clerk or stenographer in the law office of Senator Bennett at Mapleton, Iowa, where she had been so engaged for about ten years prior to her visit to Oregon. The two boys at that time were aged 10 and 15 years respectively. Sometime before that the husband of Bertha L. Proctor suffered a physical breakdown and moved to the state of Idaho for medical treatment, so that, during that year, she and her

husband were not living together. About September 16, 1929, either of her own volition or at the invitation of her mother, she left South Dakota with her two younger children and took up her home with her parents at Cove, Oregon. Along about September of 1930, Dorothy Proctor paid a visit to her mother and other relatives in Oregon, spending much of her time with her grandparents at Cove. Shortly after her arrival, she examined into the record and condition of her grandparents' property which at that time consisted of real estate, notes and mortgages, and about $12,000 in savings accounts in the banks.

In October, 1930, she assisted her grandparents in making a testamentary disposition of their property. A. B. Daniel transferred all his property, whether owned by him individually or jointly with his wife, to one Lou Payne, who thereupon transferred it all to the wife, Jennie F. Daniel. At the same time, Jennie F. Daniel made a will bequeathing all the said property to A. B. Daniel, the husband, for life, and upon his death, after making the following provision for her son "Al Daniel, I give, devise and bequeath one dollar ($1.00), only, he having had advancements which would equal more than his proportionate share in the estate" and a couple of other minor bequests, she bequeathed all of her estate to her four children, Roy Lay, Bertha L. Proctor, Reuben H. Daniel and Ivy Feldman "share and share alike" and named B. A. Benham as executor.

In the winter and spring of 1931, Jennie F. Daniel became very ill and was taken to the Hot Lake Sanatorium for treatment. While there and on her sick bed on April 8, 1931, she made an order to the banks in La Grande, where the money on savings deposit was kept, to transfer said savings account to "a joint account payable to my daughters, Mrs. Ivy C. Feld-

man and Mrs. Bertha L. Proctor''. These accounts were in the First National Bank of La Grande and the United States National Bank of La Grande. In June, 1931, these accounts were transferred by Ivy C. Feldman ''for personal reasons'' to Bertha L. Proctor. She regained her health to a considerable extent and returned to her home in Cove where she lived until the spring of 1932 when she had another sick spell and died April 19, 1932.

Thereafter in due course, the will was admitted to probate and B. A. Benham appointed executor. When the executor was about to have the inventory of the estate made, he inquired about the moneys in the banks. The daughters thereupon informed him that there was no money in either bank belonging to the estate; that their mother had made Ivy C. Feldman a gift of $3,000 and Bertha L. Proctor a gift of $5,000 and that some $2,300 had been turned over to Bertha L. Proctor in trust, to be used by her in the future care of her father, A. B. Daniel, and that the balance had been spent in the care and keeping of the old people up to that time.

Thereafter, B. A. Benham, as executor of the last will and testament of Jennie F. Daniel, brought the instant action to recover for the estate, from the defendants, the sum of $11,634.68, the amount alleged to have been in the banks at the time the order was made transferring it from the account of Jennie F. Daniel to her daughters.

Sometime thereafter, B. A. Benham resigned as such executor and Roy Lay was appointed administrator *de bonis non* and was substituted as plaintiff herein.

To the complaint defendants filed an answer, alleging in substance as follows: That Bertha L. Proctor

left her home in South Dakota and came to Cove, Oregon, at the earnest solicitation of Jennie F. Daniel and A. B. Daniel to care for them during their remaining years; that in the year 1931, Jennie F. Daniel was the owner of certain real property located at Cove, Oregon, and approximately $12,000 in cash in addition to other notes and mortgages; that in April, 1931, Jennie F. Daniel transferred to the defendants Bertha L. Proctor and Ivy C. Feldman, the sum of $5,470.24 of her funds in the United States National Bank and the sum of $7,308.89 of her funds in the La Grande National Bank (First National Bank) of La Grande, Oregon; that in June, 1931, all of said funds were transferred to Bertha L. Proctor to be held by her subject to the authority and further direction ''of said Jennie F. Daniel''; that in September, 1931, the said Jennie F. Daniel directed the defendant, Bertha L. Proctor, to pay to, and for the benefit of, Ivy C. Feldman, the sum of $2,000 and she had given said money to Ivy C. Feldman with the understanding that she would pay to the grantor interest on that sum during the grantor's life. This sum was to be secured by a mortgage on some Portland property to be taken in the name of Bertha L. Proctor as grantee who was to hold it as trustee. That it was further agreed that upon the death of Jennie F. Daniel said Bertha L. Proctor was to deliver to the said Ivy C. Feldman the said note and mortgage, the trustee holding the note and mortgage as trustee for Jennie F. Daniel as to the interest and as trustee for Ivy C. Feldman as to the principal. That Jennie F. Daniel at the same time directed Bertha L. Proctor to transfer to Ivy C. Feldman the sum of $1,000 in consideration of love and affection, said money to remain in the said bank during the lifetime of said Jennie F. Daniel and

the interest thereon to be paid to Jennie F. Daniel, but the principal to be the property of said Ivy C. Feldman. That in October, 1931, said Jennie F. Daniel entered into an agreement with Bertha L. Proctor wherein it was agreed that if the said Bertha L. Proctor would agree to remain and care for the said Jennie F. Daniel and her husband, A. B. Daniel, until their death, she would give and transfer to Bertha L. Proctor the sum of $5,000 in cash and that Bertha L. Proctor accepted the offer and entered upon the duties and care of said Jennie F. Daniel and her husband, and has discharged said duties up to the time of the death of Jennie F. Daniel and is still caring for the said A. B. Daniel and has complied with all the terms of said agreement and is still able and willing to continue so doing. That Jennie F. Daniel then and there transferred and delivered to said Bertha L. Proctor the sum of $5,000 in cash and directed her to withdraw said sum from the La Grande National Bank when desired. That, by the terms of said agreement, the residue of said funds was to be held in trust for the benefit of the trustor Jennie F. Daniel and her husband A. B. Daniel during their lives. That Bertha L. Proctor paid to Ivy C. Feldman $100 in cash in addition to the $2,000 loaned on the mortgage and still holds as trustee the sum of $900 to be delivered to said Ivy C. Feldman. Defendants in their answer insert a statement of accounts of the money in each bank as follows:

"* * * in the United States National Bank, viz:

| | |
|---|---|
| Cash on hand | $5,470.24 |
| Cash deposit, April 20, 1931 | 108.40 |
| Interest accrued July 1st, 1931 | 36.19 |
| Interest accrued January 1st, 1932 | 68.06 |
| Total | $5,681.88 |

## DISBURSEMENTS:

April 20, 1931, cash for expenses ........................$ 150.00

September 1st, 1931 cash for Ivy C. Feldman
mortgage as hereinbefore described ........... 2,000.00

October 2nd, 1931 miscellaneous cash for
household expenses ............................................ 35.00

December 19th, 1931 miscellaneous cash for
household expenses ............................................ 25.00

January 20th, 1932 miscellaneous cash for
household expenses ............................................ 10.00

March 5, 1932 waiver of deposit on organization of new bank ............................................ 1,730.00

April 8th, 1932 transferred to First National
Bank ...................................................................... 1,731.88

Total withdrawals ........................................$5,681.88''

"* * * and in the La Grande National Bank,
viz:

April 9th, 1931, cash on hand ...........................$7,308.89

Interest accrued and credited ........................... 355.52

June 30th, 1931, interest accrued ..................... 126.28

April 8th, 1932, from United States National
Bank ...................................................................... 1,731.88

Interest credited June 30th, 1932 ..................... 293.12

Total ...............................................................$9,815.69

## DISBURSEMENTS:

April 20th, 1931 withdrawn to pay hospital
and household expenses ....................................$ 150.00

June 2, 1931, withdrawn to pay for car and
household expenses ............................................ 1,200.00

November 21, 1931, cash for investment of
Jennie F. Daniel ................................................ 100.00

March 21, 1932, cash replacement for protested check .......................................................... 22.51

April 26, 1932, payment to Ivy C. Feldman as
hereinbefore set out .......................................... 100.00

| | |
|---|---|
| Cash for Ivy C. Feldman | 900.00 |
| Cash for Bertha L. Proctor | 5,000.00 |
| Interest accruing on Feldman cash to June 20, 1932 | 7.00 |
| Interest accruing on Proctor cash to June 20, 1932 | 36.60 |
| Balance held in trust for Alfred P. Daniel as hereinbefore set forth | 2,299.58 |
| Total | $9,815.69'' |

To this answer plaintiff filed a reply which in effect alleges that about October 21, 1930, A. B. Daniel was the owner of real and personal property of the value of between twenty-five and thirty thousand dollars including cash in hand. This money he accumulated during a long period of years. That he was then 88 years old, enfeebled in body, and only a limited education and knowledge of business matters; that his wife, Jennie F. Daniel, was about 14 years his junior, much better educated and more qualified to manage the business and protect the interest of her aged husband and that, by reason thereof, A. B. Daniel entered into a contract and agreement with his said wife affecting his property in his own right, whereby it was agreed between them that said A. B. Daniel should transfer all his property real and personal to his said wife in consideration that she should use and invest it for the joint benefit of both during the life of both and that she should make a last will and testament and therein devise and bequeath to her said husband during the period of his natural life all of said property for his support during his declining years to be administered solely for his support and enjoyment and that said will should provide after the death of said A. B. Daniel that all the said property, real and personal, should descend and vest in the children of the

said Jennie F. Daniel, share and share alike, to wit: Roy Lay, Reuben H. Daniel, Bertha L. Proctor and Ivy C. Feldman, the son, Al Daniel having received more than his proportionate share, and that B. A. Benham should be appointed executor of said last will and testament to carry out the terms of said contract and all of which the said Jennie F. Daniel agreed to do and freely and voluntarily and without the influence of any one entered into the contract and agreement and then and there on October 21, 1930, executed a will in accordance with said agreement. A full copy of the will is set up showing the bequests heretofore mentioned, and then follows:

"LASTLY, I hereby make, constitute and appoint B. A. Benham to be the executor of this, my last will and testament, he to act as such executor until the termination of the life estate herein named, before this estate shall be closed."

At the same time and as part of the same transaction, A. B. Daniel transferred all his property to Jennie F. Daniel and that said transfer was made in consideration of the execution of said last will and testament. Said will was not revoked nor any codicil executed thereto and was duly admitted to probate.

The reply further alleges that the defendants well knew of said contract and will being entered into.

They further allege that Bertha L. Proctor had earnestly solicited her parents to furnish a home for her and her two minor children and that, by reason of said solicitation, they, her parents, sent money to transport her and her children to Cove; that there never was any segregation of any of the sums of money in the bank; that Jennie F. Daniel retained complete control over all said sums of money until her death.

The cause was tried as a suit in equity on request of defendants. The court made findings and decree in favor of defendants and plaintiff appeals.

The first question presented is: Was the consideration for the transfers made by A. B. Daniel to Jennie F. Daniel, of his property and the property in their joint names, that she should make the will that she did make?

Mr. Benham, the executor, who had no personal interest in this case, who drew the will and prepared the transfers of the properties from A. B. Daniel to Jennie F. Daniel, and was present at their execution, in answer to the question, "What was the consideration for these transfers?", testified that:

"The old gentleman deeded and assigned his property to his wife Jennie F. Daniel—(here he was interrupted by an objection) that the assignment, to get it into her individual name, and she in turn was going to make and did make a will, wherein she would provide with the property and money, mortgages and all the rest of her effects, for the use of A. B. Daniel as long as he lived. After his death it would be to the four heirs she named, Le Roy Lay, Reuben Daniel, Bertha L. Proctor and Ivy Feldman to be divided among them."

The above quotation is the substance of all his testimony on that point and there is no substantial competent evidence to the contrary. He also testified that there was no other consideration for the transfers and it was agreed that the will should divide the property share and share alike among the four heirs mentioned. This is exactly what was done.

There is some testimony on the part of Bertha L. Proctor and Dorothy Wittenmeyer that, before they went to Mr. Benham's office to have the business transacted, Jennie F. Daniel had said on one or two

occasions that she wanted to "even up matters for the girls"; that the boys had been getting money from the parents right along as they needed it and she wanted to give the girls money with which to get a home.

Dorothy Wittenmeyer testified that the reason that the transfers were made from A. B. Daniel to Jennie F. Daniel was to cut out A. B. Daniel's two daughters by his earlier marriage as they already had their share. There is no competent evidence that any of the boys, except Al Daniel, ever got any money from the parents. And the will in cutting him off with one dollar did even up matters with the rest of the family. There is testimony showing that the parents occasionally loaned money to the other two boys but always took their notes and exacted interest for the loan. When the loan was a large one, as the $12,000 one loaned to Reuben, they took a note and also a mortgage on a farm, that Reuben had paid $17,000 for, as security.

The defendants testified to the effect that these statements of Jennie F. Daniel about wanting to do something extra for the girls were made before the will was executed, yet nothing was said about the matter in the will and it would have been just as easily arranged as the cutting off of Al Daniel.

■■ We are of the opinion that the evidence shows that the transfers from A. B. Daniel were made for the consideration of the making of the will and, the will having been so made in accordance therewith, the testator would not be permitted to thereafter violate the agreement by dissipating the estate: *Stevens v. Meyers,* 91 Or. 114 (177 P. 37, 2 A. L. R. 1115); *Taylor v. Wait,* 140 Or. 681 (14 P. (2d) 283); *Schramm v. Burkart,* 137 Or. 208 (2 P. (2d) 14), and cases therein cited.

The best proof that there was such a contract is the fact that the will was actually made in accordance therewith and never changed or modified in any respect.

■ Respondent contends that if such a contract was made it was modified by mutual consent thereafter. But there is no evidence in the record of such consent. Rather defendants are trying to establish the theory that the money in the bank belonged to Jennie F. Daniel or that in any event, it being deposited in their joint names, she had a right to withdraw it. Section 22-1407, Oregon Code 1930, relied upon by respondents regarding the withdrawals of joint deposits, is for the protection of the bank and does not protect the one who should withdraw contrary to a mutual agreement. Assuming that they were equal contributors and equal owners in the money deposited in the banks to their joint accounts, that would not authorize Jennie F. Daniel to transfer it to her daughters in violation of her agreement when she accepted the transfers of her husband's property. Nor do we think she did.

Nothing is claimed by respondents for the transfer of the accounts made by Jennie F. Daniel at Hot Lake Sanatorium, April 9, 1931, except that said transfers were made to respondents in trust for the use and benefit of Jennie F. Daniel and A. B. Daniel. The transfer in June from Ivy C. Feldman to Bertha L. Proctor must have been made by the direct authority of Jennie F. Daniel and did not change the nature of the holding of Bertha L. Proctor. There is no competent evidence tending to show that the nature of the holding was ever changed. Bertha L. Proctor testified that she never drew any checks, or expended one dollar of the money in the banks without the consent and authority of her mother, Jennie F. Daniel. If the $5,000, which she claimed was a gift, belonged to her,

why was it always necessary to get permission from her mother to make any expenditures?

She was asked:

"Q. These checks here, state whether or not they were all given at your mother's instructions?

"A. Yes, she told me to go right ahead and handle the business for her and issue the checks and I gave her the bank book and she O. K.'d everything and said everything was all right and went over the books after she came back from the hospital.

"Q. Now referring to defendants' exhibit No. 3, being the bank book in the name of Mrs. Bertha Proctor and to the item there of the withdrawal of $25, December 19, 1931, can you explain that item?

"A. Well, it was mother's. I went with her and she withdrew it. She had a right to withdraw whatever she wanted."

This transaction was later than the date on which respondents claim that the mother had made an absolute gift to Bertha L. Proctor of $3,000.

Respondent Bertha L. Proctor alleges in her answer that she was to receive $5,000 if she would remain with her parents and look after them as long as either of them should live. In her testimony she claims that $3,000 was an absolute gift and that she was given the extra $2,000 to remain with her parents as long as they both should live.

Again Mrs. Proctor was asked:

"Q. Now tell what was said in the summer of 1930 prior to the making of the will—what was said about it, how it should be made and the matter handled?

"A. She said that if they made their will, she wanted to see that the girls—we girls—had more than the boys; it had to be apportioned in some way—get more than they did, because they had more than we ever had and they had theirs as they went along, and

she says, 'I want to see that you girls get what is coming to you'.

"Q. Now what also did she say in reference to the girls having a home?

"A. Well, she said in case that they did not get around to making a will, well, she had put money away for us and there was money in the bank and she said she 'put it away little by little as fast as I could spare it and I am trying to get enough for you girls for a home. If I make a will, I will will it to you and if I don't I will give it to you'."

■ This conversation took place before Jennie F. Daniel made the will. The foregoing promise, if accepted at its face value, was that the girls were only to be given the money in case she failed to make a will. She did make the will and she left the girls an equal proportion with the boys. A written will can only be altered or revoked in the manner provided by law: Oregon Code 1930, § 9-904.

■ ■ Both respondents testified that when the money in the banks was transferred to them on April 9, 1931, it was put in their names as trustees for their parents and that afterwards their mother made the alleged gifts.

"A gift obtained by any person standing in a confidential relation to the donor is *prima facie* void, and the burden is thrown upon the donee to establish to the satisfaction of the court that it was the free, voluntary, unbiased act of the donor. A court of equity on the grounds of public policy, watches such transactions with a jealous scrutiny, and to set them aside it is not necessary to aver or prove actual fraud, * * *." *Jenkins v. Jenkins,* 66 Or. 12 (132) P. 542).

Mrs. Proctor further testified:

"Q. Were you authorized to draw checks for any purpose you wanted to without your mother knowing it or what it was for?

"A. No, I always asked her about the drawing of her money of course and she would always say 'Now I don't want you to take any more out of there than you have to. I want the income to be used first'."

■ "To consummate a gift there must be a transfer of possession and of the dominion over the subject of the gift. The law on this subject has been stated and restated so often by this court that it would answer no useful purpose to again restate it. The following cases are conclusive upon this question: Liebe v. Battmann, 33 Or. 241 (54 P. 179, 72 Am. St. Rep. 705); Deneff v. Helms, 42 Or. 161 (70 P. 390); Waite v. Grubbe, 43 Or. 406 (73 P. 206, 99 Am. St. Rep. 764); Baker v. Moran, 67 Or. 386 (136 P. 30); Baber v. Caples, 71 Or. 212 (138 P. 472, Ann. Cas. 1916C, 1025); Hillman v. Young, 64 Or. 73 (127 P. 793, 129 P. 124); Allen v. Hendrick, 104 Or. 202 (206 P. 733)." *Miller v. Medford National Bank et al.*, 115 Or. 366 (237 P. 361); *Garde v. Goldsmith*, 131 Or. 481 (283 P. 39).

■ We are persuaded that the evidence shows that Jennie F. Daniel never parted with the title to, or dominion over, the money in the banks at any time, and that no gift was made to either of the respondents. The money claimed to have been a gift to Mrs. Feldman secured by a note and mortgage, payable to Bertha L. Proctor, was what it purports to be—a loan, and whether the note and mortgage has been executed in the name of Mrs. Feldman or that of her daughter, it was a loan made for the use and benefit of Mrs. Feldman and in either event should be put back into the estate by proper assignments made by the grantee named in the mortgage, Mrs. Bertha L. Proctor, to be appraised as any other asset of the estate.

■ The money, $2,299.58, alleged to be held in trust for the benefit of A. B. Daniel, should be turned over to the executor as part of the estate. Respondent Bertha L. Proctor undoubtedly acted under the direct

authority of Jennie Daniel in waiving the $1,730. We are further of the opinion that the items of expenditures set out in the accounts in respondent's answer, other than the alleged gifts, were made under the direct authority of Jennie F. Daniel and were such expenses as might be legitimately made by the trustee. This includes the item of $1,200 expended for an automobile which was a gift to Bertha L. Proctor.

The evidence clearly shows that respondent Bertha L. Proctor has given good care to her parents since she has been living at their home, and that she still continues such care and attention to her aged father who has reached such a degree of senile mental debility that he was unable to testify at the trial of this cause. However, if she is entitled to any compensation for such services she should file a claim with the executor.

There is considerable other testimony somewhat to the same effect as Mrs. Proctor's, but all of such testimony is reconcilable with the theory that she, Mrs. Proctor, was holding the money in the banks and transacting the business as trustee for her mother and father. It would extend this opinion to an unreasonable length to quote and review all this testimony. So, ignoring all of the testimony on the part of plaintiff, the evidence and the circumstances show a mutual agreement between Jennie F. Daniel and her husband at the time the will was executed and the transfers made. Even if Jennie F. Daniel had the right to make gifts to her daughters she did not do so.

■ We think that the evidence shows clearly that Jennie F. Daniel, when she made her will, made the exact provisions for her family that she intended, as a complete and final disposition of her property and that she never afterwards changed her mind, and the

making of her will in that particular way was a part of a mutual agreement between her and her husband based on the consideration of the transfers of the husband's property to her and that said mutual agreement had not been thereafter rescinded by either party.

The decree of the circuit court will be modified and one entered in conformity with this opinion, and judgment entered in favor of appellant and against Bertha L. Proctor for the sum of $8,299.58, and the property attached in this action be sold in the manner provided by law to satisfy said judgment. And that it be decreed that Bertha L. Proctor, named as payee in the note and as grantee in the mortgage given to secure the loan of $2,000 to Ivy C. Feldman (alleged in the answer as a gift), is holding said note and mortgage as trustee for the estate of Jennie F. Daniel and that she shall, by proper assignment, transfer it to the executor of said estate, and if she fails to execute said assignment within ten days from the entry hereof then this decree shall stand for and as such assignment. Under all the circumstances in the case, we are of the opinion that neither party should recover costs in this court.

It is so ordered.

RAND, C J., and BEAN and BAILEY, JJ., concur.